United States v. Jackson. Mr. Sims, you may. May it please the Court, Counsel. The Confrontation Clause, Your Honor, is deeply rooted in our legal history. Crawford v. Washington states that, as a core principle, an out-of-court statement by a witness would not be used in a trial against a defendant unless two things. One, the witness was unavailable. Two, the defendant had a chance to cross-examine him at a prior time. The government, I believe, concedes that, one, the witness was available. And two, my client did not have an opportunity to cross-examine him. They're relying on Brady. Not Brady. They're relying on Gaten. United States v. Gaten, where the Court, this Court, said, As we have explained, a confidential informant's out-of-court statements are not hearsay if they are offered not for the truth but to put the defendant's statements in context or to make what he said and did in reaction to the informant's statements intelligible to the jury. So how do you frame that to the jury in the jury instruction? However, I assert that these instructions fall short. They, the instructions that they gave in relevant part to the jury, they say, The recordings contain statements and questions by the confidential source in this case. You may consider statements or questions of the confidential source on the recordings only to help you understand what the defendant said in response or did in reaction to those statements or questions. You may not consider the confidential source statements or questions for the truth of what the confidential source said. The confidential source statements and questions and emphasis that I'm adding standing alone are not evidence of the defendant's guilt. When you put those words standing alone are not evidence, it infers that you can add that to the other evidence that was presented. And that violates Gaten, that violates Crawford v. Washington. Can you talk a little bit more about Gaten? Because one of the challenges I think for Mr. Jackson is that Gaten is pretty factually similar, right? It's the same kind of scenario with CI transactions and all that. Correct. And, you know, in the course of the court's analysis in Gaten, the court references a similar limiting instruction, right, to the one that you just outlined there. So how do you, if we have to follow Gaten, how would you recommend that we distinguish it? I would distinguish it by the jury instructions. The jury instructions that were presented in Jackson's case fall short. They allow the jury to take that evidence that is not supposed to be for the truth of the matter and combine it with other evidence and use that to determine Mr. Jackson's guilt. I'm saying that if the court will allow the government to use Gaten as a trial strategy because I assert that they did not want that witness to get on the stand. If that witness got on the stand, it was going to open up a whole can of worms. There would be the problem of was he coerced into wearing that wire? Did this agent, which is also noteworthy, this case started in the state court. There were no federal actors in this case. This case came from the state to the federal after it was determined that the agent was not following the law as applied by the state of Illinois. The state of Illinois has an eavesdropping law, and it states that both parties on a recording have to consent to that recording. However, being that they knew the necessity of using undercover agents and wearing wires, they gave them a procedure to be able to use these wires in criminal convictions. This agent ran roughshod over all the rules. This agent decided that he would not follow those rules, and when the case ran into trouble in state court, he ran to his big brother, the federal government, which says that we only need one person to concede or to give consent to wearing a wire. Therefore, the case can proceed further. However, there were other issues that troubled the defendant and troubled myself once I was appointed to the case. This agent seems to have a history of circumventing the law. If that is allowed to stand, if this ruling, if this judgment is allowed to stand, we are going back to what the courts pre-American history were worried about. Why they always said that a defendant has a right to confront his accusers, because this is allowing the government to decide, well, if we don't like what our CI or our person is going to say, well, we just don't have to put them on the stand. We can use Gaten as a trial strategy, not out of necessity, but out of trial strategy, because as I stated, the witness was available. They had the witness back. We just cannot allow the government to gut Crawford v. Washington, and that's what would happen if we allow this to stand. I'll save my time for rebuttal. Thank you, Mr. Simpson. Mr. Kutchin? Your Honors, may it please the court, counsel. I guess I would start out by saying that most of what Mr. Simms talked about was a challenge to the instruction in this case, and there's nothing in his brief challenging that instruction. So I think under this court's well-established precedent, any such argument about the legal correctness of that instruction has been weighed. And indeed, the instruction almost perfectly tracked Gaten. It did, Your Honor. In fact, that was the instruction that was submitted to the court based on this court's decision in Gaten. And I think that, as has been alluded to, this court's decision in Gaten is materially indistinguishable from the facts of this case and I think controls in all respects. Also, I'm a little confused about the arguments about the agents or any kind of misconduct in the case. There's certainly no evidence in the record of that. The Illinois anti-eavesdropping law has nothing to do with this case. No, Your Honor. In fact, what is in the record is that it was the state's attorney who had authorized this over here, and the state's attorney failed to file a copy of his authorization with the circuit court as is required. And then under the actual statute in Illinois, it became admissible. That's a far cry from actual misconduct on the part of any agent. It was a technical requirement that was not complied with. And in any event, any issues regarding the suppression, that was the subject of his suppression motion. Again, none of that is contained in his brief, and for that reason, it was weighed. Mr. Kuchin, can I just ask you to comment? Mr. Sims made kind of a side point. It's not a feature of his argument or anything like that, but he said, you know, the government was running away from the CI and didn't want the CI on the stand. And when I read the briefs, that actually struck me as quite plausible, but not for the reasons that Mr. Sims is talking about, to actually protect him at trial. Because is it not the case that he ordered a beatdown of the CI? He did, Your Honor. And if the CI had testified, do you think that would have been admissible? We filed a motion in Lemony to admit that testimony as a consciousness of guilt, I think, under this court's precedent. And was it ruled upon? It wasn't because at the point, at the hearing that it would have been ruled upon, well, actually, I take that back. My recollection is that at one of the pretrial hearings, the defendant indicated he had no objection to the motions in Lemony that had been filed at that point. So that evidence would have been admissible. That's my recollection of that, Your Honor. It wasn't until later at the next hearing that the government learned and advised the court that the CS had escaped, which rendered irrelevant the consciousness of evidence guilt because the government did not call that witness. So my recollection is it was ruled upon because the defendant indicated he had no objection to those motions in Lemony. And I agree with Your Honor, the CS would certainly be a double-edged sword. And I think if you look at— It just seems like it would have been a total mess. And, I mean, I understand the argument he's making, and he's done it very ably for his client. But it just seems putting the CS on the stand would have been—that could have been very messy. It would have been. And if you look at this court's decision in Wallace, the court indicated that the defendant could have certainly called the witness had it wanted to and paid a strategic reason not to do that. Certainly, I don't want to leave the impression. Mr. Sims indicated that the CS was in the government's custody. He was not. He was in state custody, which is not the same as the federal government's custody. He had escaped from a county jail while there on state charges. There's no indication in the record that he was available in the sense that he was willing to testify. I'm not—you know, I certainly—it's not in the record that he wasn't. But there is—the record is silent as to this witness's actual availability to testify. You were not trial counsel. I'm sorry? You were not trial counsel. I was trial counsel, Your Honor. And you did not know whether he was available or not? I can answer that question, but it would require me to go beyond the record. If the court would like me to do that, I can. Yeah, you can answer that question. Your Honor, the confidential source was arrested, I believe, on Saturday before the trial was to start on Monday. The case agent contacted the confidential source to see if he would be willing to testify. And the confidential source wanted assurances that the escape would not—he would not be cross-examined regarding the escape because he anticipated charges relating to that escape. And obviously, we couldn't do that, and for that reason, we did not call him. So, again, I don't want to certainly be accused of going beyond the record. No, that's fine. That's the answer that I could give the court. But, again, under Gaten, the availability of the witness does not matter. Gaten makes clear that the witness was available to be called and found that irrelevant to the Confrontation Clause question. The same was true, I believe, with regard to Wallace as well, and I believe Foster. All cases cited in our brief. So, Your Honor, for those reasons, unless the court has any other questions about this issue, or the second issue, which was a challenge to the sentence in this case, I believe this court's decision in Pearson from just the end of May of this year controls that question as well. If there's no questions. I just have one. You made some reference to the state's attorney failing to get the appropriate authorization. Is that what you were saying with regard to the recording? No, Your Honor. Under the Illinois statute, and, again, this was addressed in the motions to suppress, which are not an issue on appeal, the Illinois statute allows a state's attorney without court authorization to authorize and overhear. One of the things that the state's attorney is supposed to do after that authorization is given is file a memo or some kind of memorialization with the circuit clerk's office saying, I did this. The state's attorney in this case failed to do that. What I was saying was it wasn't an issue where someone was acting surreptitiously or acting in any way. All that happens with that record is it's placed in a file. It's not like it's submitted for judicial determination. I understand. I understand, but Mr. Simms has raised the specter of a possibility of action in a state court prosecution, which by design or neglect or oversight causes running room for a federal agent to move the case. When this state's attorney failed to follow the appropriate procedure, was the case agent in this case involved in any way? The case agent in this case was involved in the state case. He was not a federal agent. He was part of a drug task force. But, again, Your Honor, that's not the case that we have here. Again, although it's not at issue in this appeal, if the court were to look at the briefing on the motion to suppress, you would see that the law of the circuit is quite clear, that there may well be differences between state and federal law in terms of admissibility of evidence, but it's the federal rule that controls, not the state rule. All right. Thank you. Your Honor, unless there's any further questions. Apparently not. Mr. Simms. This was not a task force, Your Honor. This was state agents. This case was charged in the state court. It only became a federal case after it was determined that in the state case, the overhears would not be admissible. Then it was transferred to a federal court. Yeah, but that's a lot different, Mr. Simms, than a suggestion that a forced error occurred in the state court to create the opportunity for the feds to move. Oh, no. I do not want the court to think that I was saying that they intentionally violated the intent so that it would go feds. I'm saying that once it was challenged in state court and the state court said, yes, Mr. Jackson, you are correct, he did not follow procedure, and therefore this is inadmissible, it was a, well, let's do an end around this problem. Well, it's not so much an end around as it is a separate system. A separate system, but what is the motive? My argument is, well, what is the motive? Because, as I said, it should be justice and only justice that they're seeking. What about the situation which we have commonly where gun cases could be charged in state or federal court and quite often they go to federal court because of the potential punishment? I'm sure you're aware of that. Yes, Your Honor. So isn't that quite analogous to perhaps this situation? If we were talking about keeping a level playing field, but we're not in this case. In this case, my client is being handicapped because his right to confrontation is being circumvented strictly because, as they now want to claim, my client ordered a beatdown. But my client was never charged with this. My client was never indicted with this. They are saying that, and I'm running out of time, so I'm just going to conclude by saying, Your Honor, if you look at the jury instructions, you will be able to distinguish the jury instructions in my client's case from Gaten. You think they're significantly different than Gaten? I think the fact that they say that standing alone, the confidential source statements and questions standing alone are not evidence of the defendant's guilt. When you make that statement, you are inferring that you can still use those statements as evidence. You can combine them with the rest of the amended evidence. And I believe that violates Gaten. You can consider them for context purposes, correct? According to Gaten, you can consider them only to explain what the defendant said or his reactions, not for any evidentiary purpose of his guilt. And I believe that their jury instructions infer that you can. Thank you, Your Honor. Thank you, Mr. Simms. Mr. Simms, thank you for accepting the appointment in this case. Thank you, Your Honor. It's been my honor. Thank you.